# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

---

## LINDEMEYR *v.* HOFFMAN.

---

PATENTS; REDUCTION TO PRACTICE.

1. No actual test of the practicability of a device is needed to constitute reduction to practice, where the device is itself complete and capable of practical use; but where the device made was crude and the inventor himself testifies that he did not regard it as fit for practical use, it cannot be regarded as reduction to practice of the invention, although others made subsequently upon the same pattern were practical and successful.
2. Where, in an interference case, there is no satisfactory proof of actual reduction to practice by either party before the filing of their applications, the one who was first to conceive the invention and the first, by three days, to file his application, and so constructively reduce to practice, is entitled to an award of priority of invention.

No. 156. Patent Appeals. Submitted January 11, 1901. Decided March 6, 1901.

HEARING on an appeal from a decision of the Commissioner of Patents, in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. B. R. Catlin* and *Mr. Philip Mauro* for the appellant.

*Messrs. Pennie & Goldsborough* for the appellee.

*Mr.* Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the acting Commissioner of Patents in an interference case wherein the subject-matter of controversy is described to be — a sheet-metal cap for closing bottles and the like, having in its sides plain faces indented to form inwardly extending lugs and longitudinally crimped between said faces to afford a good holding-surface.

The appellees, Edmund Hoffman and Robert Portes Frist, hold a patent for this invention, for which they made application on March 29, 1898, and which was issued to them on November 1, 1898. The appellant, Philip Lindemeyr, filed his application on March 13, 1899. He was, therefore, the junior applicant and required also to overcome the effect of a previously existing patent. The burden thus imposed upon him it is sought on his behalf to lessen by reference to the fact that his present application is no more than a proper division of a previous application filed by him on April 1, 1898, wherein the matter here in controversy is embodied and distinctly shown, but not specifically claimed, and which application, after having been permitted to lapse in consequence of failure to pay the final fee required by the Patent Office, was duly renewed, and allowed to go to patent on March 14, 1899, one day after the filing of the application in the present case. Upon the theory, therefore, that the present application is no more than a division of the previous one, made while that previous application was pending and before it had gone to patent, a proceeding authorized by the rules and practice of the Patent Office, it is claimed that the applications of both parties for the invention now in controversy were both pending at the same time. But even upon this theory, the appellant Lindemeyr remains the junior applicant, his first application being three days later than that

of his opponent's, and the burden of proof in any event is upon him. The facts which have been stated are important only in the determination of the amount and character of the proof required from him in order to enable him to prevail over his opponents.

In his preliminary statement Lindemeyr alleged that he had conceived, disclosed, and reduced the invention to practice in May of 1896, and that a few caps had been made and put in use. The preliminary statement of Hoffman and Frist, alleged conception by them in 1891, disclosure in 1894, construction of machinery to manufacture the article in August or September of 1897, and the actual manufacture of the article by September 15, 1897; and that manufactured product was put upon the market on May 11, 1898.

When, after testimony taken, the cause came on for determination, the examiner of interferences held that Lindemeyr, although his proof was somewhat weak, had established his concception and reduction to practice in May of 1896, according to the claim of his preliminary statement; that the alleged conception of the invention by Hoffman and Frist in 1891, being shown by no other testimony than their own, could not be admitted; that they did, however, sufficiently prove that they had a conception of it in 1894; that what they did then was not a reduction to practice; and that their first reduction to practice was only the constructive reduction evidenced by the filing of their application on March 29, 1898. The examiner thereupon held that Hoffman and Frist were the first to conceive the invention and the last to reduce it to practice; and that their priority of conception could not avail them as against one who had in the meantime entered the field, conceived the invention, and reduced it to practice, unless they were then in the exercise of due diligence. He found that they were not in the exercise of due diligence, and that they had done nothing in the matter from 1894 to 1897. He, therefore, awarded judgment of priority of invention to Lindemeyr. Incidentally, also, he ruled that Lindemeyr was required to prove his case only by a preponderance of evidence; and also that his patent

issued on March 14, 1899, was no bar to the present application, either on the ground that the present application, if allowed, would result in a duplication of patents, or on the other ground that the invention being shown in the previous patent and in the application therefor, the failure to claim it should be regarded as an abandonment of it to the public.

The board of examiners-in-chief found that, while Lindemeyr had a conception of the invention in 1896, there was no reduction to practice by him before the constructive reduction involved in the filing of his application on April 1, 1898. And they found conception by Hoffman and Frist in 1894, and constructive reduction to practice by them in their application filed on March 29, 1898. They were, therefore, held to be the first to conceive and the first to reduce to practice, and consequently to be entitled to a judgment of priority of invention, which was awarded to them, and the decision of the examiner of interferences was reversed. The board of examiners did not deem it necessary to pass upon the question of actual reduction to practice by Hoffman and Frist before the filing of their application, and they left that matter in doubt.

Upon appeal to the Commissioner of Patents, the acting Commissioner, who sat in his place, held that there was sufficient proof of reduction to practice by Hoffman and Frist in 1894; and consequently that they antedated Lindemeyr in every respect. He, therefore, affirmed the decision of the board of examiners in awarding priority of invention to Hoffman and Frist.

From the decision of the acting Commissioner of Patents the cause now comes here on appeal.

While the Commissioner of Patents and the board of examiners-in-chief concur in the award of priority of invention to the appellees, Hoffman and Frist, thereby reversing the judgment of the examiner of interferences, which, as stated, was in favor of Lindemeyr, it is apparent that no two of the tribunals of the office are in accord as to the grounds of adjudication. There is one thing, however, in which they all agree; and that is, in the award of priority

of conception of the invention to the appellees, not as of the year 1891, at which time they claim to have conceived it, and as to which there is no proof outside of their own unaided testimony, but as of the year 1894, when they claim to have made disclosure and a sketch of it, and possibly some attempt to reduce it to practice. This priority of conception is conceded on behalf of Lindemeyr. At all events, it is not controverted; and it may be assumed to have been satisfactorily established by the testimony. This conception antedates that of Lindemeyr by two years.

The point of controversy, therefore, is that of reduction to practice.

The appellees claim an actual reduction to practice by them in 1894; the appellant, a similar reduction to practice in 1896; and both were more or less active in the general subject-matter, to which the issue of the interference belongs, during the years 1897 and 1898. If it were satisfactorily shown by the testimony that there was actual reduction to practice by the appellees in 1894, as the assistant Commissioner of Patents found to be the fact, this, of course, would be decisive of the case.

If it were not so shown, then it would be proper to examine what was done by Lindemeyr in 1896; for it does not appear that anything was done in the meantime by either party.

We fully concur with the assistant Commissioner in his holding that no actual test of the practicability of a device is needed, where the device is itself complete and capable of practical use. Such was the holding of this court in the case of *Mason* v. *Hepburn,* 13 App. D. C. 86; and such has been the ruling in numerous other cases. And so, if the cap embodying the issue in this case, which was exhibited by the appellees in 1894, was a completed device and capable of practical use, although never actually used, it may undoubtedly be regarded as an actual reduction to practice of the invention in controversy. But we find ourselves unable to regard this cap as a completed device or capable of practical use; and to justify this conclusion we need not go farther than the tes-

timony of Hoffman himself, who, in cross-examination, in
answer to a question whether he regarded this particular
cap as fit for practical use on a bottle, said: " The design
of it I do, but not the cap itself, as it is made in a very crude
manner."

This is no more than to say that the idea would be found
practical, when reduced to practice,— a mere truism; and it
negatives all pretense of an actual reduction to practice.
That caps were made afterward on the same pattern and
after the same design, only shows that the idea was after-
ward embodied in practical results. But this does not help
out the claim that the original crude device, conceded by the
inventor not to be fit for practical use, was an actual reduc-
tion to practice. Such a claim must be regarded as a contra-
diction in terms, and wholly untenable.

As this cap of the appellees, claimed to have been designed
in 1891 and exhibited in 1894, is the only evidence of actual
reduction of the invention to practice by the appellees before
1897, we must hold that they fail to show such actual reduc-
tion to practice before the action, whatever it was, of the
appellant in 1896.

And here it may be remarked as qualifying the testimony
on both sides that the parties to this interference appear
from the record not to be novices in the field of invention,
that they have had numerous patents issued to them during
the period of the incubation of this invention; and that,
therefore, they must be supposed not to be ignorant of the
requirements of the patent law, or ignorant of the require-
ments of the laws of evidence which govern cases like the
present.

Lindemeyr, in support of his claim that he conceived and
reduced to practice in 1896 the invention in controversy,
has offered in evidence a cap which is designated in the
record as " Exhibit Cap No. 1," which contains the issue
of the interference, and which may be assumed from the tes-
timony to have been made about May of 1896. This is the
time at which he himself testifies that it was made; although,
strangely enough, his only witnesses who testify definitely

as to the time at which this exhibit was made, say, and one of them says very positively, that it was made before April 1, 1896. But we may assume it to have been made, when Lindemeyr himself says it was made, after and not before the date of his conception of the invention in May, 1896.

Lindemeyr further testifies that immediately thereafter he caused a brass neck to be fitted on a bottle, and that on this brass-necked bottle he used satisfactorily his cap No. 1; that thereafter he caused a wooden model bottle to be made, which was introduced in evidence as "Lindemeyr Exhibit A," from which a number of bottles were made about September of 1897; that in the summer of 1896 he had about fifty or seventy-five caps made like cap No. 1, which were subsequently fitted upon bottles; but that none of the caps, none of the bottles, were ever preserved; that there was no document of any kind to fix a date, and that nothing whatever was preserved which bore upon the alleged invention other than the original cap No. 1, and the wooden model "Exhibit A." There is no testimony of other witnesses sufficiently positive and distinct to support the appellant's statement. Their testimony is simply to the effect that they saw other caps like cap No. 1. But as there are caps Nos. 2 and 3, and other caps in the case, which are more or less like cap No. 1, and yet which do not embody the issue in controversy, this testimony amounts to nothing. Nor can we attach any great importance to the wooden model "Exhibit A," which is the model of a bottle, because it is not the matter in issue, and is accommodated, as it would seem, to other caps also as well as that designated as "Cap No. 1."

"Cap No. 1," therefore, would seem to be the only substantial evidence of reduction to practice by the appellant in 1896; and cap No. 1 is not, in our opinion, a reduction to practice. It is, at the utmost, nothing more than a crude model. As remarked by the board of examiners, it has a hole punched through its top, and, therefore, in itself could never have been considered as a practical cap. It is also deficient in other respects, which are mentioned by the

board, and need not be repeated here. Moreover, as in the case of the so-called " Cap of 1891 " of the appellees, the inventor himself does not seem quite sure of its practicability. When he was asked on cross-examination whether this cap made an efficient stopper, his answer was quite evasive and unsatisfactory. It was that these caps " stoppered the bottles they were put on; " and he declined to say whether they did so effectively. Of course the identical " Cap No. 1 " produced in evidence could not have done so.

The fact would seem to be, that both parties were working at something else, some caps more or less different from that here in issue, and discarded for the time as merely experimental and unsatisfactory, all that they had done in the line of the present invention, until the 25th day of March, 1898, when the appellant, in company with some other persons, visited the factory in which the appellees were concerned in New Jersey, and when both parties became more or less cognizant of the operations of each other. It would seem that it was not till then that the abandoned experiments of both were revived, and a rush was made for the Patent Office. At all events, we agree with the board of examiners-in-chief in the Patent Office in finding no satisfactory proof of actual reduction to practice by either party before the filing of their applications in the office on March 29, 1898, and April 1, 1898, respectively.

But, as the appellees were the first to come into the Patent Office, although only three days before the appellant, and thereby the first to acquire constructive reduction to practice, and were confessedly the first to conceive the invention, they are entitled to the award of priority of invention, as found in their favor both by the board of examiners and by the assistant Commissioner.

The decision of the assistant Commissioner of Patents is, therefore, *affirmed.*     *The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents according to law.*